IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JIMMY FRIESE,

                Plaintiff,

     v.

FRANK BISIGNANO,[1]

                Defendant.

2:25-CV-00701-CCW

## OPINION

Before the Court are cross motions for summary judgment.  ECF Nos. 7, 16.[2]  For the reasons set forth below, the Court will DENY Defendant's Motion and GRANT Plaintiff's Motion insofar as he seeks remand for further administrative proceedings.

## I.    Background

Plaintiff filed an application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and for supplemental security income benefits ("SSI") pursuant to Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, on August 29, 2023, alleging disability beginning January 17, 2022.  (R. 66–67).  Plaintiff sought a hearing after his application was initially denied and appeared telephonically for a hearing before an Administrative Law Judge (the "ALJ") on December 2, 2024 (R. 19).  On January 30, 2025, the ALJ found Plaintiff to be not disabled and denied his application for DIB and SSI benefits.  (R.

---

[1] Frank J. Bisignano is substituted as the defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).  The clerk is directed to amend the docket to reflect this change.

[2] Plaintiff styled his Motion as a "Motion for Judgment on the Pleadings."  ECF No. 7 at 1.  However, Plaintiff and Defendant both cite extensively to the record in their briefing.  The Court will therefore construe Plaintiff's Motion as one for summary judgment.  *Frontier Dev. LLC v. Craig Test Boring Co.*, No. 16-778, 2017 WL 4082676, at *3 (D.N.J. Sept. 15, 2017) ("As the parties themselves have treated Defendants' motion as a summary judgment motion, the Court follows their lead and will review the motion as one seeking summary judgment.").

31).  The Appeals Council subsequently denied Plaintiff's request for review, which caused the ALJ's decision to become the final agency determination of Plaintiff's disability.  (R. 1).

Plaintiff now seeks review in this Court and asks the Court to reverse or, in the alternative, remand this matter for further administrative proceedings.  ECF No. 8 at 22.

## II.    Standard of Review

For legal questions, the Court's review is plenary.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  The Court reviews the ALJ's fact finding for "substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019) (quoting 42 U.S.C. § 405(g)).  The evidentiary threshold for "substantial evidence" is "not high."  *Id.* at 103.  It demands only that an ALJ's findings be supported by "such relevant evidence as a reasonable mind might accept as adequate." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quotation omitted).  If, upon review of the record as a whole, *Schaudeck*, 181 F.3d at 431, the Court determines that the ALJ's findings are supported by substantial evidence, the Court is bound by those findings even if it would have decided the case differently.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter v. Harris*, 642 F.2d. 700, 705 (3d Cir. 1981).  Stated differently, the ALJ "must provide at

least a glimpse into his reasoning," and "build an accurate and logical bridge between the evidence and the result." *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citations omitted).

An ALJ's determination of disability proceeds in five steps.  20 C.F.R. §§ 404.1520, 416.920.  The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity;  (2) if not, whether the claimant has a severe impairment;  (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1;  (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work;  and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. *Edwards v. Berryhill*, No. CV 16-475, 2017 WL 1344436, at *1 (W.D. Pa. Apr. 12, 2017) (citing 20 C.F.R. § 404.1520).

The inquiries at steps four and five require the ALJ first to formulate a claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [his or her] limitations" from "medically determinable impairments" including those that are non-severe.  20 C.F.R. §§ 404.1545(a)(1)–(2), (5), 416.945(a)(1)–(2), (5).  The ALJ's formulation of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and it must include all limitations that a claimant proves to be credible.  *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x. 140, 147 (3d Cir. 2007) ("[T]he ALJ need only include in the RFC those limitations which he finds to be credible.").  The RFC is an administrative finding, not a medical opinion, which is reserved exclusively to the ALJ.  20 C.F.R. §§ 404.1520(b)(c)(3)(v), 416.920b(c)(3)(vi).  The claimant bears the burden of proof for the first four steps, and the Commissioner bears the burden of proof at step five.  *Smith v. Comm'r of Soc.*

*Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  Where an ALJ has articulated reasoning supporting a credibility determination, that determination is entitled to "great deference."  *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x. 183, 188–89 (3d Cir. 2007) (quoting *Atl. Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001)).

### III.    The ALJ's Decision

The ALJ first found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  (R. 22).  Next, the ALJ found that Plaintiff had four (4) severe, medically determinable impairments:  (1) bipolar disorder;  (2) depression;  (3) anxiety disorder;  and (4) attention deficit, hyperactivity disorder (ADHD).  (R. 22).  At step three, the ALJ found Plaintiff had no impairments that met or equaled criteria for a listed impairment in 20 C.F.R., pt. 404, subpt. P., appx. 1.  (R. 22–24).

Having resolved steps one and two in Plaintiff's favor, but having found no presumptively disabling impairments at step three, the ALJ next formulated Plaintiff's RFC.  The ALJ found Plaintiff to be capable of:

> [A] full range of work at all exertional levels but with the following non-exertional limitations: the claimant is able to understand, retain, and carry out simple and detailed instructions with occasional workplace changes and occasional decision-making. Instructions should be provided verbally rather than written. The claimant should avoid occupations requiring mathematical calculations, such as a cashier. The claimant should avoid in-person interaction with the public, except for incidental contact and is limited to occasional interaction with co-workers and frequent interaction with supervisors. The claimant should avoid occupations involving group, team, or tandem work activity.

(R. 24–25).  To arrive at the RFC, the ALJ considered Plaintiff's symptoms (R. 25–26), treatment records from the relevant period (R. 26–27), consultative medical and psychiatric examinations (R. 27–28), prior administrative medical findings (R. 29) and evidence of Plaintiff's activities of daily living (R. 28).  Considering the RFC, the ALJ determined Plaintiff could perform his past

4

relevant work as a warehouse worker. (R. 30). The ALJ therefore found Plaintiff not to be disabled (R. 31).

## IV.    Legal Analysis

Plaintiff argues the ALJ committed three reversible errors when formulating the RFC. First, Plaintiff argues the ALJ failed to properly consider the consistency of medical opinions regarding Plaintiff's social limitations and regarding Plaintiff's inability to carry out detailed instructions. ECF No. 8 at 14–15. Second, Plaintiff argues the ALJ mischaracterized Plaintiff's reported activities of daily living to reject medical opinions regarding Plaintiff's social limitations and inability to carry out detailed instructions. *Id*. at 16. Third, Plaintiff argues the ALJ failed to explain why Plaintiff is capable of "frequent" interaction with supervisors, but only "occasional" interaction with co-workers and "incidental" contact with the public. *Id*. at 20. The Court has considered Plaintiff's arguments and will remand this matter for further administrative proceedings, primarily because the ALJ mischaracterized Plaintiff's reported activities of daily living when discounting medical opinions regarding Plaintiff's social limitations and inability to carry out detailed instructions.

### A.    The ALJ Was Not Required to Explicitly Consider the Consistency of each Medical Opinion with Every Other Medical Opinion in the Record

Plaintiff first argues the ALJ failed to properly consider the consistency of medical opinions regarding Plaintiff's social limitations and inability to carry out detailed instructions. ECF No. 8 at 14–15. Specifically, Plaintiff argues the ALJ failed to consider the consistency between the opinions of Dr. Chiodo and Dr. Berger regarding Plaintiff's extreme social limitations and failed to consider the consistency between the opinions of Dr. Brelsford, Dr. Williams, and Dr. Berger regarding Plaintiff's inability to carry out detailed instructions. *Id*. at 15. Defendant contends that the ALJ was not required to "specifically compare each medical source's assessed

5

limitations to each other" and that, even if he were, the underlying opinions did not consistently assess extreme social limitations or an inability to carry out detailed tasks.  ECF No. 10 at 5–8.

The consistency of a medical opinion is, along with the opinion's supportability, "the most important factor[]" for the ALJ to consider in evaluating the persuasiveness of that opinion. *Graham v. Kijakazi*, No. 21-CV-1334, 2022 WL 10514312, *3 (W.D. Pa. Oct. 18, 2022) (Bloch, J.);  *see also* 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Accordingly, the ALJ is required to explicitly address a medical opinion's consistency with the other evidence in the record.  *Id*.  But the ALJ need not explicitly compare the consistency of a medical opinion with every other medical opinion in the record.  *See Alhabash v. Comm'r of Soc. Sec.*, No. 23-CV-310, 2024 WL 4729505, at *1 n. 1 (W.D. Pa. Nov. 8, 2024) (Hornak, C.J.) ("Plaintiff takes issue with the fact that the ALJ did not weigh the consistency of this opinion against evidence from other medical sources. However, Plaintiff overlooks that there is no requirement that ALJs specifically catalogue consistencies between medical opinions in their decisions.") (internal citations to record omitted); *Abiodun O. v. Bisignano*, No. 25-CV-3585, 2026 WL 114261, at *7 (E.D. Pa. Jan. 15, 2026) ("Plaintiff identifies no authority for the notion that an ALJ must specifically consider each medical opinion's consistency with every other in the record. His cited regulation, 20 C.F.R. § 404.1520c(c)(2), provides only that the ALJ must evaluate an opinion's consistency generally with the other 'evidence' in the record[.]").  Here, the ALJ explicitly addressed the consistency of the opinion of Dr. Brelsford and Dr. Williams limiting Plaintiff  to one to two step tasks, finding the opined limitation "not consistent with . . . the longitudinal record or the claimant's reported activities of daily living[.]"  (R. 29).  The ALJ explicitly found Dr. Berger's opinion regarding Plaintiff's various limitations to be "inconsistent" with the broader record.  (R. 30).  And the ALJ explicitly addressed the consistency of Dr. Chiodo's opinion regarding Plaintiff's "extreme" social

limitations and found those opined limitations "inconsistent" with "the remaining treatment records[.]" (R. 29). Thus, the ALJ explicitly addressed the consistency of each of these three[3] medical opinions. The ALJ's failure to explicitly consider the consistency of Dr. Chiodo's opinion regarding Plaintiff's "social limitations" with Dr. Berger's opinion regarding the same was not error. Neither was the failure to explicitly consider the consistency between the opinions of Dr. Brelsford, Dr. Williams, and Dr. Berger regarding Plaintiff's limitations carrying out detailed instructions.

### B.    The ALJ Failed to Sufficiently Explain Why He Discounted Opinions Regarding Plaintiff's Functional Limitations

Plaintiff next argues that the ALJ over-emphasized Plaintiff's activities of daily living to discount medical opinions regarding Plaintiff's functional limitations. Specifically, Plaintiff asserts the ALJ improperly discounted the opinions of Dr. Brelsford and Dr. Williams regarding Plaintiff's inability to carry out detailed instructions, and improperly discounted the opinions of Dr. Chiodo and Dr. Berger regarding Plaintiff's social limitations. ECF No. 8 at 16. Defendant contends that the ALJ did not rely solely on Plaintiff's activities of daily living to discount these opinions, but also relied on examination findings, the prior administrative medical finding, and Plaintiff's lack of mental health treatment. ECF No. 10 at 7. The Court concludes that the ALJ failed to sufficiently explain why he discounted the opinions from Dr. Brelsford and Dr. Williams regarding Plaintiff's social limitations and inability to carry out detailed tasks.

As noted, the ALJ found that Plaintiff was capable of "carry[ing] out simple *and detailed* instructions." (R. 24) (emphasis added). In making that finding, the ALJ discounted the opinion of Dr. Brelsford and Dr. Williams that Plaintiff is limited to "performing one to two step tasks," because the ALJ determined that opinion was "not consistent with, or supported by the longitudinal

---

[3] As the state agency review psychologists, Dr. Brelsford and Dr. Williams issued a joint opinion (R. 66–103).

record or the claimant's reported activities of daily living, which show that cla[i]mant engages in multi-step tasks, including engaging in personal care, performing chores, making and attending appointments, [and] playing video games, etc." (R. 29). [4] In support thereof, the ALJ cited to a "Function Report" Plaintiff completed and to Plaintiff's testimony at the hearing. *Id*.

However, neither the function report nor Plaintiff's testimony at the hearing support a finding that Plaintiff is capable of carrying out detailed instructions. On the function report, Plaintiff stated that he does not change his clothes, bathe, or shave unless he has a medical appointment. (R. 282). Plaintiff further stated that: he needs reminders from his aunt to bathe and to take his medicine; that he "sometimes" helps his aunt clean the kitchen or take out the garbage; that he shops for groceries once a week; that he may eat as little as once a week; and that he does not know how to use a checkbook. (R. 282–84). When asked to list the social activities he participates in, Plaintiff wrote that he "sometimes . . . helps [his] aunt with things when she comes over to the house[.]" (R. 285).

When the ALJ asked Plaintiff whether he cooks, Plaintiff testified that he does so "[m]aybe a couple times a month, but not really" and that, when he does cook, he does so by heating frozen meals in a microwave. (R. 49). Plaintiff further testified that he: shops for groceries once a month; plays video games once a month; does not change his clothes; could not remember the last time he did laundry; struggles to maintain good hygiene "[m]ost of the time"; and, at the time of the hearing, had not showered in approximately one month. (R. 49–53). Plaintiff's reported activities of daily living do not, therefore, indicate that Plaintiff can carry out multi-step instructions. Furthermore, no medical experts cited in the RFC opined that Plaintiff can perform multi-step tasks. Thus, the ALJ was not "weigh[ing] the medical evidence and draw[ing] his own

---

[4] The ALJ found the opinion of Dr. Brelsford and Dr. Williams "generally persuasive," except for their opinion regarding Plaintiff's limitation to one to two-step tasks. (R. 29).

inferences," *Carpentertown Coal & Coke Co. Inc. v. Dir. Off. of Workers Comp. Programs United States Dep't of Lab.*, No. 20-3617, 2023 WL 21464, at *2 (3d Cir. Jan. 3, 2023), when he discounted Dr. Brelsford and Dr. Williams' opined limitation and determined that Plaintiff can "carry out . . . detailed instructions." (R. 24). The ALJ thus failed to "build an accurate and logical bridge between the evidence and the result." *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (Ambrose, J.) (internal citations omitted). Accordingly, the ALJ's decision to discount the opinion of Dr. Brelsford and Dr. Williams regarding Plaintiff's limitation to one to two step tasks was not supported by substantial evidence.

The ALJ also determined that Plaintiff is capable of "occasional" interaction with co-workers and "frequent" interaction with supervisors. In making that finding, the ALJ discounted the opinion of Dr. Chiodo, who opined that Plaintiff has "extreme" limitations in interacting with the public, supervisors, or co-workers.[5] (R. 699). The ALJ determined that opinion was inconsistent with Dr. Chiodo's own notes from her evaluation of Plaintiff and with evidence in the broader record that: "[Plaintiff] has friends with whom he goes to the bar and movies"; that Plaintiff experienced "general improvement and/or stability of his mood during periods of medication compliance"; and that "mental status examination[s] generally note well-behaved and cooperative attitude, normal behavior, clear and appropriate speech, good hygiene, and no evidence of hallucinations, obsessions, preoccupations, or delusions or reported homicidal ideations." (R. 29). In support thereof, the ALJ cited to various exhibits with Plaintiff's treatment and hospitalization records. *Id*.

The ALJ also discounted the opinion of Dr. Berger, who opined that Plaintiff is precluded for more than 20% of an 8-hour workday from: interacting appropriately with the general public;

---

[5] In addition to specifically discounting Dr. Chiodo's opinion regarding Plaintiff's social limitations, the ALJ also found Dr. Chiodo opinion "less than persuasive" at the source level. (R. 29).

accepting instructions and responding appropriately to criticism from supervisors;  and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (R. 773–74). [6]   The ALJ found Dr. Berger's opinion regarding Plaintiff's social limitations inconsistent with Dr. Berger's own treatment notes, which "generally reflect fair to good eye contact, well-behaved and cooperative attitude, normal speech, and no demonstrations of hallucinations, delusions, paranoia or reported homicidal ideations[,]" and with evidence in the broader record that Plaintiff "has friends with whom he goes to the bar and movies" and experiences a "general improvement and/or stability of his mood during periods of medication compliance with mental status examination that generally note well-behaved and cooperative attitude, normal behavior, clear and appropriate speech, good hygiene, and no evidence of hallucinations, obsessions, preoccupations, or delusions or reported homicidal ideations." (R. 29–30).  In support thereof, the ALJ again cited to Plaintiff's treatment and hospitalization records. *Id*.

However, the records the ALJ cited to discount the opinions of Dr. Chiodo and Dr. Berger regarding Plaintiff's social limitations do not indicate that Plaintiff is capable of regular social interaction in the workplace.   Treatment records do generally reflect that Plaintiff was "cooperative" with medical providers.[7]  (R. 750).  And a treatment record from May 17, 2024 noted that Plaintiff "states [that] he has a good relationship with his aunt.  He also has friends and goes out with them to the bar or movies.  But most of the time he spends his time by himself watching TV." (R. 793).  Another treatment record, from June 13, 2024, noted that Plaintiff "[h]as

---

[6] In addition to discounting Dr. Berger's opinion regarding Plaintiff's social limitations, the ALJ also found Dr. Berger's opinion "not persuasive" at the source level.  (R. 30).

[7] Although, in many cases, the relevant treatment records state that Plaintiff was only "marginally cooperative."  (R. 707, 746).

been seeing a friend more" and that Plaintiff's "aunt and friend are a good support" system for Plaintiff. (R. 741).

But evidence that Plaintiff was cooperative with his medical providers and participated in limited social activities with friends and family is not inconsistent with social limitations in the workplace. *Nicholas B. v. O'Malley*, No. 3:24-CV-00169-CRS, 2025 WL 597085, at *5 (W.D. Ky. Feb. 7, 2025), *report and recommendation adopted sub nom. Nicholas B. v. Dudek,* No. 3:24-CV-00169-CRS-RSE, 2025 WL 595176 (W.D. Ky. Feb. 24, 2025) ("[M]any courts have noted that a patient's ability to interact with their close family and medical professionals does not correlate with an ability to interact with coworkers, supervisors, or the general public."); *Wozniak v. Berryhill*, No. CV 16-139, 2017 WL 930791, at *4 (W.D. Pa. Mar. 9, 2017) (Ambrose, J.) ("[I]t is difficult to extrapolate from seeing good friends . . . to being able to interact with co-workers and supervisors appropriately on a daily basis."). And the treatment records the ALJ cited do not, as the ALJ stated, "generally reflect . . . good hygiene." (R. 29). To the contrary, treatment records repeatedly reflect that Plaintiff exhibited poor hygiene, was poorly groomed, and was malodorous at his medical appointments. (R. 695, 699, 746, 750, 754). Furthermore, while certain treatment records note that Plaintiff "admit[ted] to noncompliance with medication[,]" (R. 708), other treatment records note that Plaintiff continued experiencing "issues with mood and anxiety despite compliance with present medication." (R. 430); *see also Killiebrew v. Comm'r of Soc. Sec. Admin.*, No. 21-cv-8975, 2023 WL 2674768, at *6 (D.N.J. Mar. 29, 2023) ("Even if this record does constitute a failure to seek treatment, the Third Circuit has stated that a lack of evidence of treatment for a claimant's alleged impairments does not necessarily 'provide an adequate basis to support a conclusion' that the claimant is not disabled."). Accordingly, the ALJ's reliance on Plaintiff's treatment records to discount the opinions of Dr. Chiodo and Dr. Berger regarding

Plaintiff's social limitations was error. Here again, the record lacks a "sufficient . . . explanation of [the ALJ's] findings to permit meaningful judicial review." *Jones*, 364 F.3d at 505. The Court thus finds that the ALJ's rejection of the opinions of Dr. Chiodo and Dr. Berger regarding Plaintiff's social limitations was not supported by substantial evidence.

Accordingly, the Court will remand this case for further consideration. Upon remand, the ALJ shall reexamine the opinions of Dr. Brelsford and Dr. Williams regarding Plaintiff's limitation to one to two-step tasks, taking care to explain how, if at all, Plaintiff's daily activities demonstrate that Plaintiff can carry out detailed instructions. The ALJ shall also reexamine the opinions of Dr. Chiodo and Dr. Berger regarding Plaintiff's social limitations.[8]

## V.    Conclusion

For the foregoing reasons, this matter is hereby remanded to the Commissioner for further proceedings consistent with this Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g).


DATED this 27th day of February, 2026.


BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

---

[8] Plaintiff also challenges the ALJ's failure to explain why Plaintiff's RFC allows for only "incidental" contact with the general public but allows for "occasional" interaction with co-workers and "frequent" interaction with supervisors. ECF No. 8 at 20–22. Plaintiff contends the failure to explain the different levels of limitation is reversible error. *Id.* Defendant did not address this issue in its briefing. *See generally* ECF No. 10. The Court does not rule on that question here but notes that the remand is broad enough for the ALJ to consider—to the extent the RFC includes different social limitations for the public, co-workers, and supervisors—whether supplemental explanation of such differing levels is warranted.

cc (via ECF email notification):

All Counsel of Record